UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gregory Lambert,
as Administrator of the
Estate of Harrison Lambert

    v.                                    Case No. 17-cv-404-AJ
                                        Opinion No. 2019 DNH 171

Town of Merrimack, NH

**O R D E R**

Plaintiff Gregory Lambert, administrator of the estate of

his son, Harrison Lambert, (the "Estate") filed this action

bringing civil rights claims based on the Fourth Amendment

against Town of Merrimack, New Hampshire, police officers

William Gudzinowicz and Matthew Tarleton; claims under the

Americans with Disabilities Act ("ADA") and Section 504 of the

Rehabilitation Act against the Town; and state-law claims

against all three defendants.  The case was assigned to the

undersigned magistrate judge, to whose jurisdiction the parties

consented.  Doc. Nos. 2, 5; see 28 U.S.C. § 636(c).

The court granted summary judgment in favor of Gudzinowicz

and Tarleton on the Estate's civil rights claims, and the Estate

conceded summary judgment as to the state-law claims against all

three defendants.  As to the Estate's claim under the ADA,[1] the

_____

[1] As in its previous order on summary judgment, the court
will refer to the ADA and Rehabilitation Act claims together as
the Estate's "ADA" claim.  See Doc. No. 22 at 8 n.3; Parker v.

court deferred ruling so that the parties could have an opportunity to brief and present relevant evidence in light of Gray v. Cummings, 917 F.3d 1 (1st Cir. 2019), in which the First Circuit considered for the first time the interplay between the ADA and "ad hoc police encounters with members of the public during investigations and arrests."  See Doc. No. 22 at 20-21.

The Town has renewed its motion for summary judgment on the Estate's ADA claim (Doc. No. 23).  The Estate opposes summary judgment.  For the reasons that follow, the Town's motion for summary judgment is granted.

## Standard of Review

The court adopts the same standard of review in addressing the Town's renewed motion for summary judgment as applied in addressing the Town's first motion for summary judgment.  Doc. No. 22 at 2-3.  In brief, the question before the court is whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

Universidad de P.R., 225 F.3d 1, 4 n.2 (1st Cir. 2000) (noting that Title II of the ADA "essentially extends the reach of [Section] 504 to state and local governmental entities that do not receive federal financial assistance.").

## Background[2]

On September 3, 2015, Gudzinowicz and Tarleton, as well as another Merrimack police officer, Richard McKenzie, responded to a domestic disturbance incident at the home of Harrison and Gregory Lambert. Dispatch reported to the officers that the incident involved a knife, and the officers understood that the call was related to a disturbance at the home of Harrison Lambert, with whom the officers had prior encounters.

Because Gudzinowicz and Tarleton responded from a training session, they carried only their firearms and wore their training uniforms. They did not have their utility belts, which contained "less-lethal" Taser weaponry. McKenzie, who was on patrol duty at the time, had his utility belt and a Taser alongside his firearm.

When the officers arrived at the home, McKenzie identified Harrison Lambert and shouted at him to show his hands. Lambert did not obey that command, and he shouted profanities at McKenzie. Lambert began walking away, but he turned back. At this time, McKenzie saw that Lambert was holding a knife, and he shouted "drop the knife" at Lambert. Doc. No. 12-17 ¶ 9. Tarleton and Gudzinowicz, who had by then arrived and were

---

[2] The facts of this case are discussed in further detail in the court's prior order on the defendants' first motion for summary judgment. Doc. No. 22 at 3-8.

exiting their vehicle, also started yelling at Lambert to drop the knife.  Lambert did not comply.

The officers were positioned in a semi-circle near Lambert, with him approximately 30 yards from Tarleton and 15 to 20 yards from Gudzinowicz.  Lambert paced back and forth, then ran at the officers in a zig-zagging fashion, holding the knife at his side and pointed forward.  The officers continued to command Lambert to drop the knife, but he failed to comply and instead ran toward Tarleton.  After Lambert continued to ignore the officers' commands to drop the knife, Tarleton and Gudzinowicz shot Lambert.  McKenzie did not use his firearm or Taser because he believed that the likelihood of collateral damage was too high.  Less than thirty seconds elapsed between the time the officers exited their vehicles and the time Tarleton and Gudzinowicz began firing.  Lambert died as a result of the gunshot wounds.

## Discussion

In its sole remaining claim, the Estate asserts, through a theory of respondeat superior, that the Town is liable for its officers' deliberate indifference to the risk of a violation of the ADA, namely, deliberate indifference to the need to provide certain reasonable accommodations to Lambert during the officers' encounter with Lambert on September 3, 2015.  The Town

4

argues that it is entitled to summary judgment because the Estate has failed to show that the officers acted with deliberate indifference.

In Gray v. Cummings, the First Circuit assumed, without deciding, that a plaintiff could bring a claim of deliberate indifference against a municipality premised on the failure of a police officer to reasonably accommodate a person's disability during an ad hoc encounter that occurs in the course of an investigation or arrest. 917 F.3d at 15-16, 18. Although the court assumed that a plaintiff could bring such a claim, it concluded that the facts shown by the plaintiff were insufficient to meet the hypothetical standard it articulated for the claim. Id.

Under that standard for deliberate indifference under the ADA, which the court applies here for the same reasons discussed in Gray,[3] the plaintiff must show that "the defendant knew that an ADA-protected right was likely to be abridged, yet neglected to take available preventative action notwithstanding such knowledge." Id. at 18. In the reasonable accommodation context, this means that the defendant must have known that a particular reasonable accommodation was necessary under the circumstances but, nevertheless, failed to provide it. See id.

_____

[3] The Estate and the Town also apply this standard in their briefs.

5

To establish this, the defendant must have possessed particularized knowledge about the plaintiff and his disability, because, otherwise, the defendant cannot gauge what reasonable accommodation is necessary under the ADA.  Id.

The Town contends that the Estate has failed to show that the officers had sufficient particularized knowledge about Lambert's disability to know that they were required to provide an accommodation under the ADA.  In response, the Estate asserts that the officers' previous encounters with Lambert, his involuntary commitment, and their training on bi-polar disorder creates a genuine dispute about whether the officers knew enough about Lambert's disability to know that they were supposed to provide him with reasonable accommodations.  Specifically, the Estate argues that the officers knew that, instead of surrounding Lambert and yelling, they had to approach him carefully, monitor him from a distance, contact and wait for a mental healthcare professional, and use nonthreatening language. The Estate also contends that Gudzinowicz and Tarleton should not have responded to the call without less-lethal weaponry such as a Taser.

The court finds that Gudzinowicz, Tarleton, and McKenzie did not have sufficient particularized knowledge about Lambert's disability to act with deliberate indifference to the risk of an ADA violation.  The officers did not have a sufficient basis to

6

know that, under the circumstances, the adjustments to their tactics identified by the Estate were reasonable and necessary accommodations under the ADA. In other words, the officers did not know enough about Lambert's mental disability to know "what specific accommodation, if any, might [be] reasonable under the circumstances." Id. Therefore, they did not act with deliberate indifference to the risk of an ADA violation. See id.

At most, the evidence shows that the officers had a general awareness that Lambert had a mental disability that caused his behavior to be unpredictable, possibly violent, and dismissive of authority. The officers, however, did not have sufficient knowledge about that disability – or the factors exacerbating it at the time – to understand how it would manifest in response to their attempts to resolve the emergency situation. The Estate points to the officers' prior encounters with Lambert and their training on mental health, but those encounters and the training identified by the Estate provided little information to the officers on what specific accommodations Lambert would need to be provided in the circumstances facing them on September 3, 2015.

For example, the Estate points to a training sheet that provides "hints" to officers for handling encounters with individuals with mental illness. See Doc. No. 29-2 at 5. These

7

hints, however, are generalized and do not offer particularized information relevant to all encounters.[4] Similarly, the Estate makes a generalized argument that the officers knew to use "nonthreatening" language, but the Estate makes no effort to show a difference between language that would have been ADA-compliant under the circumstances and the language that the officers actually employed. The Estate does not identify what the officers said to Lambert that was "threatening", and the record reveals only that the officers yelled at Lambert, told him to show his hands, and told him to drop the knife.

And the officers could not leave Lambert, who they understood to be unpredictable and violent, to his own devices while they knew that he had a weapon. Notably, during a prior encounter with Lambert that began after Lambert threatened his mother with a knife, he had tried to flee from McKenzie with the knife. Doc. No. 12-17 at 2 n.1. On September 3, 2015, the officers were again called to Lambert's home to deal with a domestic disturbance involving a knife. Given the exigencies, the Estate's claim that the officers knew that they had to

---

[4] Indeed, the hints suggest that officers should assess the safety of the situation, including whether the individual has a weapon or access to one and whether there are others present who might be at risk. They also suggest that officers have "adequate assistance and back-up." Doc. No. 29-2 at 5.

8

accommodate Lambert by keeping their distance[5] and waiting for a mental health professional fails.

The Estate attempts to evade this conclusion by arguing that "[a] jury could . . . reject the defendants' contention that defendants faced exigent circumstances," but the evidence presented on summary judgment reveals no genuine dispute about the exigent circumstances.[6]  Doc. No. 29 at 10.  Similarly, while the Estate argues that a jury could find that the defendants created the exigent circumstances, there is no evidence in the record from which a jury could find that the officers or the Town caused Lambert to threaten his father with a knife, which was the source of the exigency relevant to the officers' tactics in facing Lambert.  Nor could the jury, as the Estate argues, "find that defendants perceived the risk to be greater than it actually was since Lambert was not holding the knife up at defendants, but down low by his waist," because the facts before the court show, without genuine dispute, that Lambert was running at Tarleton with the knife blade pointed toward him.

---

[5] The evidence in the record also does not show that the officers, in fact, failed to keep their distance from Lambert, as they estimated they were between 15 and 30 yards from him.

[6] As the court informed the Estate in its order on the defendants' first motion for summary judgment, "[t]he court will not credit 'conclusory allegations, improbable inferences, or unsupported speculation.'"  Doc. No. 22 at 19 (quoting Fanning v. Fed. Trade Comm'n, 821 F.3d 164, 170 (1st Cir. 2016)).

9

Id.

Lastly, the Estate argues that Gudzinowicz and Tarleton acted with deliberate indifference by responding to the encounter armed only with firearms. The Estate, however, ignores other critical facts in the record. At the time they responded to the dispatch, Tarleton and Gudzinowicz were on their way to firearms training. Therefore, they did not have their typical duty uniform, including their Tasers. Critically, the dispatch call indicated the incident involved a knife and suggested that it was an emergency. Even the "hints" cited by the Estate tell officers that backup and assistance is important when dealing with individuals with a mental disability like bi-polar disorder.[7] For those reasons, the Estate fails to show that Gudzinowicz and Tarleton knew that they had to accommodate Lambert by responding to the dispatch call with less-lethal weapons, nor was responding to the dispatch without less-lethal weapons plainly antithetic to the ADA.

At bottom, the Estate has not presented evidence to create a genuine dispute of fact about whether the officers acted with deliberate indifference to the risk of an ADA violation. Because there is no genuine dispute as to whether the officers

---

[7] The Estate offers no evidence indicating that it was otherwise unnecessary for Tarleton and Gudzinowicz to respond to the dispatch call.

acted with deliberate indifference, the Town is entitled to summary judgment in its favor as to the Estate's vicarious liability claim.

## Conclusion

For the foregoing reasons, the court grants the Town's motion for summary judgment (Doc. No. 23). The Clerk of Court is directed to close the case.

SO ORDERED.

Andrea K. Johnstone
United States Magistrate Judge

September 30, 2019

cc:   Carly Marie Cengher, Esq.
      Lawrence A. Vogelman, Esq.
      Charles P. Baurer, Esq.
      Weston Robert Sager, Esq.

11